George Hofmann (10005)
Patrick E. Johnson (10771)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for George B. Hofmann,
Chapter 7 Trustee

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re | Bankruptcy No.  19-21358 (RKM) |
| DEREK E. CAMPBELL, | Chapter 7 |
| Debtor. | |

## TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, TO APPROVE REAL ESTATE COMMISSION

George B. Hofmann, in his capacity as Chapter 7 Trustee (the "Trustee") of the

bankruptcy estate of Derek E. Campbell (the "Debtor"), hereby moves this Court (the

"Motion"), for an order authorizing the Trustee to sell the estate's interests in the real

property described below, free and clear of interests pursuant to Bankruptcy Code §

363(f).  The Trustee makes this motion pursuant to Bankruptcy Code §§ 363(b), (f), and

(m), and 105(a) and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9014.  In

support of the Motion the Trustee respectfully states as follows:

## GENERAL BACKGROUND

1.      The Debtor commenced this case under Chapter 7 of the Bankruptcy Code by filing a voluntary petition on March 8, 2019 (the "Petition Date").  The Trustee was subsequently appointed as Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate").

2.      The Estate includes residential real property located at 766 West 3300 South, Syracuse, Utah 84075 (the "Property").  The Debtor listed the Property as having a value of $311,000.00.

3.      The Property is subject to a secured claim of Bank of America ("BofA") in the approximate amount of $159,043.00, as of the Petition Date, according the Debtor's Schedule D.  The Trustee received a payoff quote from BofA through January 23, 2020, in the amount of $168,360.26 (the "BofA Payoff Amount") as a full payoff of its lien on the Property.

4.      The Property is subject to a second secured claim of Mountain America Credit Union ("MACU").  The Trustee received a payoff quote from MACU for a lien payoff quote of $106,133.16 (the "MACU Payoff Amount").

5.      The Property is also subject to two judgments against the Property.  The first judgment is held by JEMCO Western Commerce Center Property, LLC ("JEMCO") in the amount of $24,678.84.  Through negotiations, JEMCO has agreed to a settlement of $10,000 for full satisfaction of their claim (the "JEMCO Settlement").

6.      The second judgment is held by BMO Harris Bank, N.A (the "BMO Judgment").  The BMO Judgment was recorded in the office of the Davis County Recorder on January 23, 2019 as Entry Number 3139855.

7.      According to Bankruptcy Code 11 USC § 547(b), the Trustee may avoid a lien on the Property by virtue of the fact that the BMO Judgment was recorded within the 90 days preceding the Petition Date.  The BMO Judgment will not be paid as part of the sale or at closing.

8.      The Debtor's voluntary petition for relief stated that he lived in the Property on the Petition Date.  Dkt. 1.  The Debtor claimed a homestead exemption to the Property in the amount of $30,000.  There is some dispute that the Property was not the Debtor's primary personal residence on the Petition Date.  Therefore, the Trustee contends the amount of the homestead exemption should be reduced to $5,000.  The Trustee and Debtor entered into an agreement where the Debtor has agreed to a reduced homestead exemption in the amount of $10,000.

9.      The Debtor's ex-spouse, Cindy Campbell ("Ms. Campbell"), is a co-owner of the Property, currently resides in the Property and agrees to the sale of the Property.  Further, the Debtor and Ms. Campbell's divorce decree requires that the Property be sold.

**JURISDICTION AND VENUE**

10.      The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) and the Court has jurisdiction to enter a final order.

**TERMS OF THE PROPOSED SALE**

11.      Subject to this Court's approval, the Trustee has entered into an agreement for the sale of the Property pursuant to the terms of the signed Real Estate Purchase Contract and its Addendums (the "Purchase Agreement") attached as "Exhibit

A".  The terms of the Purchase Agreement are summarized in this Motion; however, to the extent of any inconsistency between the summary in this Motion and the Purchase Agreement itself, the terms of the Purchase Agreement control.  Creditors and parties in interest are encouraged to review the terms of the Purchase Agreement.

12.   Property to be Sold.  The property proposed to be sold is the Estate's interest in the Property.

13.   Proposed Sale.  Subject to approval of the Court, the proposed sale includes the following key terms and conditions:

a.   Buyer.  The Buyer is Blaine Plastow (the "Buyer").

b.   Purchase Price.  The purchase price for the Property is $379,000.

c.   Sale Free and Clear of Interests.  The Estate's interest in the Property will be sold free and clear of all liens, interests and encumbrances pursuant to 11 U.S.C. § 363.  Any valid liens, interests and encumbrances shall attach to the proceeds of sale in the same priority as they currently exist against the Property, less, where appropriate, the costs and expenses of sale, sales commissions, closing costs, insurance, title insurance, recording fees, appraisals, survey costs, and fire protection plans which may be paid by the Trustee at closing.

d.   Anticipated Distribution of the Purchase Price.  From the proceeds of the sale of the Property, subject to this Court's approval, the Trustee shall (a) pay expenses of sale and closing costs; (b) pay outstanding property taxes due on the property; (c) pay the BofA

Payoff Amount and such additional amounts as are required to satisfy its claim secured by the Property; (d) pay the MACU Payoff Amount and such additional amounts as are required to satisfy its claim secured by the Property; (e) pay the JEMCO Settlement in the amount of $10,000; (f) pay real estate commissions of $22,740.00; (g), after deducting the foregoing, pay half of the proceeds of the sale of the Property to Ms. Campbell for ½-ownership of the Property (which is currently estimated to be $41,538.50); (h) pay a homestead exemption of $10,000.00 to the Debtor; and (i) hold the remainder of the proceeds of the sale in the Trustee's account pending further determination of this Court.

e.    <u>Title Transfer</u>.  Title to and ownership of the Estate's interest in the Property from the Trustee to the Buyer will be transferred at the time of the closing, at which time the Trustee will issue to the Buyer all necessary documents evidencing such transfer of title and ownership.

f.    <u>As Is/Where Is Sale</u>.  The Property is being sold "as is" and "where is" in all respects.  The Trustee makes no warranties or representations whatsoever with respect to the Property.

## <u>THE TRUSTEE SUBMITS THAT THE COURT SHOULD APPROVE THIS SALE</u>

14.    The Trustee believes that the proposed sale is in the best interests of creditors and the Estate.  The Trustee determined that the proposed purchase price is

reasonable, in consultation with his real estate agent.  The sale price is also

substantially higher than the Debtor's scheduled value.

15.     The Trustee does not believe that the Buyer is an insider of the Debtor or

Ms. Campbell.  As far as the Trustee has been able to ascertain, the Buyer has no

connection to the Debtor's estate or its creditors.

16.     Pursuant to Bankruptcy Code § 363(f), the Debtor may sell property free

and clear of any lien, claim, or interest in such property, if, among other things:

> (1)     applicable nonbankruptcy law permits sale of such property free
>         and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is sold is
>         greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding,
>         to accept a money satisfaction of such interest.

17.     Because Bankruptcy Code § 363(f) is drafted in the disjunctive,

satisfaction of any one of the five requirements will be sufficient to permit the sale of the

Property free and clear of lines, claims, encumbrances, pledges, mortgages, security

interests, charges, options, and other interests (collectively, the "Interests").   BofA,

MACU, JEMCO and Ms. Campbell assert an interest in the Property, and they consent

to the sale.  To the extent BMO does not consent, there is a bona fide dispute regarding

the extent of its interest vis-à-vis the Trustee's avoidance powers permitted by

Bankruptcy Code § 547.  Any other party asserting any Interests in the Property would

be subject to a bona fide dispute pursuant to Bankruptcy Code § 363(f)(4).  Accordingly,

the Debtor may sell the Property free and clear of any party asserting any Interests in the Purchased Shares, notwithstanding the BMO Judgment.

18.    In order to approve a sale free and clear of liens pursuant to Bankruptcy Code § 363(f)(4), the Court need only find that there is an objective basis for either a factual or legal dispute as to the validity of the interest. <u>Union Planters Bank v. Burns (In re Gaylord Grain L.L.C.)</u>, 306 B.R. 624 (8th Cir. B.A.P. 2004) (citing cases). Therefore, the Property may be sold free and clear of any alleged Interests pursuant to Bankruptcy Code § 363(f)(4).

19.    The Trustee has no connection with the Buyer.  The Trustee submits that his negotiations with the Buyer has at all times been conducted at arm's length, and that the Buyer is a "good faith" purchaser within the meaning of Bankruptcy Code § 363(m).

20.    In addition, the Trustee requests a waiver of the stays which would otherwise apply under Fed. R. Bankr. P. 6004(h), such that the Trustee is authorized to consummate the sale immediately after the hearing on this Motion.  The Trustee submits that cause exists for a waiver of this stay.  Waiving the stay will enable the Trustee to reach the Closing Date at the earliest possible time.

## MOTION TO APPROVE REAL ESTATE COMMISSION

21.    The commission for the real estate agent with regard to the sale of the Property will be 6% of the gross sales price.  The Trustee contemplates the commission on this sale will be $22,740.00 and desires to pay this commission at the time of sale..

**WHEREFORE,** the Trustee moves this Court to enter an Order granting the Motion in its entirety; approving the proposed sale of the Estate's interest in the Property as outlined above pursuant to 11 U.S.C. §§ 105(a), 363(b), and 363(f), with the

sale of the Estate's interest in the Property to be free and clear of liens, claims,

encumbrances, and interests; finding that all objections, if any, to this Motion are

overruled; finding that the sale is in compliance with applicable bankruptcy law; finding

that the Buyer is a "good faith purchaser" including for purposes of 11 U.S.C. § 363(m);

authorizing the Trustee and the Debtor to execute the documents necessary to

effectuate the transactions contemplated by this Motion; providing liens, claims,

encumbrances, and interests, if any, in the proceeds of the sale of the Estate's interest

in the Property attach to the proceeds of the sale; authorizing the Trustee to distribute

the proceeds of the sale as outlined above in paragraph 13(d); authorizing the Trustee

to pay the real estate commission; waiving the stay of the sale order under Fed. R.

Bankr. P. 6004(h); and for such other and further relief as is appropriate.

DATED:  May 6, 2020

COHNE KINGHORN, P.C.

/s/ Patrick E. Johnson
GEORGE HOFMANN
PATRICK E. JOHNSON
Attorneys for the Trustee

# EXHIBIT A

# REAL ESTATE PURCHASE CONTRACT

This is a legally binding Real Estate Purchase Contract ("REPC"). Utah law requires real estate licensees to use this form. Buyer and Seller, however, may agree to alter or delete its provisions or to use a different form. If you desire legal or tax advice, consult your attorney or tax advisor.

## EARNEST MONEY DEPOSIT

On this <u>20th day of April, 2020</u> ("Offer Reference Date") <u>Blaine Plastow</u> ("Buyer") offers to purchase from <u>_____</u> ("Seller") the Property described below and **agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23),** an Earnest Money Deposit in the amount of $<u>1500</u> in the form of <u>check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

## OFFER TO PURCHASE

**1. PROPERTY:** <u>766 W 3300 S, Syracuse, Davis County, UT 84075</u>

City of <u>Syracuse</u>, County of <u>Davis</u>, State of Utah, Zip <u>84075</u> Tax ID No. <u>12-381-0126</u> (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, 1.2 and 1.4.

**1.1 Included Items.** Unless excluded herein, this sale includes the following items if presently owned and in place on the Property: plumbing, heating, air conditioning fixtures and equipment; solar panels; ovens, ranges and hoods; cook tops; dishwashers; ceiling fans; water heaters; water softeners; light fixtures and bulbs; bathroom fixtures and bathroom mirrors; all window coverings including curtains, draperies, rods, window blinds and shutters; window and door screens; storm doors and windows; awnings; satellite dishes; all installed TV mounting brackets; all wall and ceiling mounted speakers; affixed carpets; automatic garage door openers and accompanying transmitters; security system; fencing and any landscaping.

**1.2 Other Included Items.** The following items that are presently owned and in place on the Property have been left for the convenience of the parties and are also included in this sale **(check applicable box): [ ] washers [ ] dryers [ ] refrigerators [ ] microwave ovens [ ] other (specify)** _____

The above checked items shall be conveyed to Buyer under separate bill of sale with warranties as to title. In addition to any boxes checked in this Section 1.2 above, there **[ ] ARE [ ] ARE NOT** additional items of personal property Buyer intends to acquire from Seller at Closing by separate written agreement.

**1.3 Excluded Items.** The following items are excluded from this sale: _____

**1.4 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: _____

## 2. PURCHASE PRICE.

**2.1 Payment of Purchase Price.** The Purchase Price for the Property is $<u>379,000</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2.1(a) through 2.1(e) below. Any amounts shown in Sections 2.1(c) and 2.1(e) may be adjusted as deemed necessary by Buyer and the Lender (the "Lender").

| | |
|---|---|
| $<u>1500</u> | **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable. |
| $<u>_____</u> | **(b) Additional Earnest Money Deposit** (see Section 8.4 if applicable) |
| $<u>317,500</u> | **(c) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer: If an FHA/VA loan applies, see attached FHA/VA Loan Addendum. |
| $<u>_____</u> | **(d) Seller Financing** (see attached Seller Financing Addendum) |
| $<u>60,000</u> | **(e) Balance of Purchase Price in Cash at Settlement** |
| $<u>379,000</u> | **PURCHASE PRICE. Total of lines (a) through (e)** |

**2.2 Sale of Buyer's Property.** Buyer's ability to purchase the Property, to obtain the Loan referenced in Section 2.1(c) above, and/or any portion of the cash referenced in Section 2.1(e) above **[X] IS [ ] IS NOT** conditioned upon the sale of real estate owned by Buyer. If checked in the affirmative, the terms of the attached subject to sale of Buyer's property addendum apply.

## 3. SETTLEMENT AND CLOSING.

**3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance

and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any Loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2 Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new Loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder ("Recording"). The actions described in 3.2 (b) and (c) shall be completed no later than four calendar days after Settlement.

**3.3 Possession.** Except as explained in Section 6.1(a) and (b), Seller shall deliver physical possession of the Property to Buyer as follows: **[X] Upon Recording; [ ] ___ Hours after Recording; [ ] ___ Calendar Days after Recording.** Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property including any personal property and belongings. The provisions of this Section 3.3 shall survive Closing.

## 4. PRORATIONS / ASSESSMENTS / OTHER PAYMENT OBLIGATIONS.

**4.1 Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 4.1 shall survive Closing.

**4.2 Special Assessments.** Any assessments for capital improvements as approved by the homeowner's association ("HOA") (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: **[X] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other (explain) _____.** The provisions of this Section 4.2 shall survive Closing.

**4.3 Fees/Costs/Payment Obligations.**

**(a) Escrow Fees.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay their respective fees charged by the escrow/closing office for its services in the settlement/closing process. The provisions of this Section 4.3(a) shall survive Closing.

**(b) Rental Deposits/Prepaid Rents.** Rental deposits (including, but not limited to, security deposits, cleaning deposits and prepaid rents) for long term lease or rental agreements, as defined in Section 6.1(a), and short-term rental bookings, as defined in Section 6.1(b), not expiring prior to Closing, shall be paid or credited by Seller to Buyer at Settlement. The provisions of this Section 4.3(b) shall survive Closing.

**(c) HOA/Other Entity Fees Due Upon Change of Ownership.** Some HOA's, special improvement districts and/or other specially planned areas, under their governing documents charge a fee that is due to such entity as a result of the transfer of title to the Property from Seller to Buyer. Such fees are sometimes referred to as transfer fees, community enhancement fees, HOA reinvestment fees, etc. (collectively referred to in this section as "change of ownership fees"). Regardless of how the change of ownership fee is titled in the applicable governing documents, if a change of ownership fee is due upon the transfer of title to the Property from Seller to Buyer, that change of ownership fee shall, at Settlement, be paid for by: **[X] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other (explain) _____ _____.** The provisions of this Section 4.3(c) shall survive Closing.

**(d) Utility Services.** Buyer agrees to be responsible for all utilities and other services provided to the Property after the Settlement Deadline. The provisions of this Section 4.3(d) shall survive Closing.

**(e) Sales Proceeds Withholding.** The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 4.3(e) shall survive Closing.

## 5. CONFIRMATION OF AGENCY DISCLOSURE. Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent(s) Terry Venable_____, represent(s) **[X] Seller [ ] both Buyer and Seller as Limited Agent(s);**

Seller's Agent(s) Utah Real Estate License Number(s): 5468552_____.

Seller's Brokerage John W. Hansen & Associates, represents **[X] Seller [ ] both Buyer and Seller as Limited Agent;**

Seller's Brokerage Utah Real Estate License Number: 5470469_____.

Buyer's Agent(s) Justin H Nunez_____, represent(s) **[X] Buyer [ ] both Buyer and Seller as Limited Agent(s);**

Buyer's Agent(s) Utah Real Estate License Number(s): 5763845_____.

Buyer's Brokerage Dwell Realty Group_____, represents **[X] Buyer [ ] both Buyer and Seller as a Limited Agent.**

Buyer's Brokerage Utah Real Estate License Number: 6451719_____.

## 6. TITLE & TITLE INSURANCE.

**6.1 Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8.

**(a) Long-Term Lease or Rental Agreements.** Buyer agrees to accept title to the Property subject to any long-term tenant lease or rental agreements (meaning for periods of thirty (30) or more consecutive days) affecting the Property not expiring prior to Closing. Buyer also agrees to accept title to the Property subject to any existing rental and property management agreements affecting the Property not expiring prior to Closing. The provisions of this Section 6.1(a) shall survive Closing.

Buyer's Initials ___BP___ Date _Apr 20, 2020_  Seller's Initials _____ Date _4-14-20_

Doc ID: c0e861dff53c9beec217734942b1b292229dfc40
Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846

(b) **Short-Term Rental Bookings.** Buyer agrees to accept title to the Property subject to any short-term rental bookings (meaning for periods of less than thirty (30) consecutive days) affecting the Property not expiring prior to Closing. The provisions of this Section 6.1(b) shall survive Closing.

**6.2 Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment (the "Issuing Agent"), the most current version of the *ALTA Homeowner's Policy of Title Insurance* (the "*Homeowner's Policy*"). If the *Homeowner's Policy* is not available through the Issuing Agent, Buyer and Seller further agree as follows: (a) Seller agrees to pay for the *Homeowner's Policy* if available through any other title insurance agency selected by Buyer; (b) if the *Homeowner's Policy* is not available either through the Issuing Agent or any other title insurance agency, then Seller agrees to pay for, and Buyer agrees to accept, the most current available version of an *ALTA Owner's Policy of Title Insurance* ("*Owner's Policy*") available through the Issuing Agent.

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a) a written Seller property condition disclosure for the Property, completed, signed and dated by Seller as provided in Section 10.3;
(b) a *Lead-Based Paint Disclosure & Acknowledgement* for the Property, completed, signed and dated by Seller (only if the Property was built prior to 1978);
(c) a Commitment for Title Insurance as referenced in Section 6.1;
(d) a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;
(e) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;
(f) a copy of any long-term tenant lease or rental agreements affecting the Property not expiring prior to Closing;
(g) a copy of any short-term rental booking schedule (as of the Seller Disclosure Deadline) for guest use of the Property after Closing;
(h) a copy of any existing property management agreements affecting the Property;
(i) evidence of any water rights and/or water shares referenced in Section 1.4;
(j) written notice of any claims and/or conditions known to Seller relating to environmental problems and building or zoning code violations;
(k) In general, the sale or other disposition of a U.S. real property interest by a foreign person is subject to income tax withholding under the *Foreign Investment in Real Property Tax Act of 1980* (FIRPTA). A "foreign person" includes a non-resident alien individual, foreign corporation, partnership, trust or estate. If FIRPTA applies to Seller, Seller is advised that Buyer or other qualified substitute may be legally required to withhold this tax at Closing. In order to avoid closing delays, if Seller is a foreign person under FIRPTA, Seller shall advise Buyer in writing; and
(l) Other (specify) _____

**8. BUYER'S CONDITIONS OF PURCHASE.**

**8.1 DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

(a) **Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the land and/or improvements; the condition of the roof, walls, and foundation; the condition of the plumbing, electrical, mechanical, heating and air conditioning systems and fixtures; the condition of all appliances; the costs and availability of homeowners' insurance and flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

(b) **Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

(c) **Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition, and except as provided in Sections 8.2(a) and 8.3(b)(i), the Earnest Money Deposit shall become non-refundable.

**8.2 APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

(a) **Buyer's Right to Cancel.** If, after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from

Buyer's Initials _BP_ Date _Apr 20, 2020_   Seller's Initials _____ Date _4/24/2_

Doc ID: c0e861dff53c9beec217734942b1b292229dfc40
Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846

Seller.

(b) **Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2, Buyer shall be deemed to have waived the Appraisal Condition, and except as provided in Sections 8.1(b) and 8.3(b)(i), the Earnest Money Deposit shall become non-refundable.

**8.3 FINANCING CONDITION. (Check Applicable Box)**

(a) [ ] **No Financing Required.** Buyer's obligation to purchase the Property **IS NOT** conditioned upon Buyer obtaining financing. If checked, Section 8.3(b) below does NOT apply.

(b) [X] **Financing Required.** Buyer's obligation to purchase the Property **IS** conditioned upon Buyer obtaining the Loan referenced in Section 2.1(c). This Condition is referred to as the "Financing Condition." If checked, Sections 8.3(b)(i), (ii) and (iii) apply; otherwise they do not. If the REPC is not cancelled by Buyer as provided in Sections 8.1(b) or 8.2(a), then Buyer agrees to work diligently and in good faith to obtain the Loan.

(i) **Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may, after the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon $_____ of Buyer's Earnest Money Deposit shall be released to Seller without the requirement of further written authorization from Buyer, and the remainder of Buyer's Earnest Money Deposit shall be released to Buyer without further written authorization from Seller.

(ii) **Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to the escrow/closing office as required under Section 3.2, then Buyer shall not be obligated to purchase the Property and Buyer or Seller may cancel the REPC by providing written notice to the other party.

(iii) **Earnest Money Deposit(s) Released to Seller.** If the REPC is cancelled as provided in Section 8.3(b)(ii), Buyer agrees that all of Buyer's Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. Seller agrees to accept, as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4 ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously canceled by Buyer as provided in Sections 8.1, 8.2 or 8.3, as applicable, then no later than the Due Diligence Deadline, or the Financing & Appraisal Deadline, whichever is later, Buyer: [ ] **WILL** [X] **WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There [X] **ARE** [ ] **ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: [X] **Addendum No.** 1____ [ ] **Seller Financing Addendum** [ ] **FHA/VA Loan Addendum** [ ] **Other (specify)** _____.

**10. HOME WARRANTY PLAN / AS-IS CONDITION OF PROPERTY.**

**10.1 Home Warranty Plan.** A one-year Home Warranty Plan [X] **WILL** [ ] **WILL NOT** be included in this transaction. If included, the Home Warranty Plan shall be ordered by [X] **Buyer** [ ] **Seller** and shall be issued by a company selected by [X] **Buyer** [ ] **Seller**. The cost of the Home Warranty Plan shall not exceed $600.00____ and shall be paid for at Settlement by [ ] **Buyer** [X] **Seller.**

**10.2 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property. The provisions of Section 10.2 shall survive Closing.

**10.3 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller property condition disclosure as stated in Section 7(a); (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23, ordinary wear and tear excepted; (d) deliver the Property to Buyer in broom-clean condition and free of debris and personal belongings; and (e) repair any Seller or tenant moving-related damage to the Property at Seller's expense. The provisions of Section 10.3 shall survive Closing.

**11. FINAL PRE-SETTLEMENT WALK-THROUGH INSPECTION.** No earlier than seven (7) calendar days prior to Settlement, and upon reasonable notice and at a reasonable time, Buyer may conduct a final pre-Settlement walk-through inspection of the Property to determine only that the Property is "as represented," meaning that the items referenced in Sections 1.1, 1.2 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a walk-through inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented.

**12. CHANGES DURING TRANSACTION.** Seller agrees that except as provided in Section 12.5 below, from the date of Acceptance until the date of Closing the following additional items apply:

Page 4 of 6                    Buyer's Initials ___BP___ Date _Apr 20, 2020_ Seller's Initials _____ Date _4-21-20_

Doc ID: c0e861dff53c9beec217734942b1b292229dfc40
Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846

**12.1 Alterations/Improvements to the Property.** No substantial alterations or improvements to the Property shall be made or undertaken without prior written consent of Buyer.

**12.2 Financial Encumbrances/Changes to Legal Title.** No further financial encumbrances to the Property shall be made, and no changes in the legal title to the Property shall be made without the prior written consent of Buyer.

**12.3 Property Management Agreements.** No changes to any existing property management agreements shall be made and no new property management agreements may be entered into without the prior written consent of Buyer.

**12.4 Long-Term Lease or Rental Agreements.** No changes to any existing tenant lease or rental agreements shall be made and no new long-term lease or rental agreements, as defined in Section 6.1(a), may be entered into without the prior written consent of Buyer.

**12.5 Short-Term Rental Bookings.** If the Property is made available for short-term rental bookings as defined in Section 6.1(b), Seller **MAY NOT** after the Seller Disclosure Deadline continue to accept short-term rental bookings for guest use of the property without the prior written consent of Buyer.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: [X] SHALL [ ] MAY AT THE OPTION OF THE PARTIES first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**

**16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

**16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration arising out of the transaction contemplated by the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

**20.1 Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

**20.2 Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, either Seller or Buyer may elect to cancel the REPC by providing written notice to the other party, in which instance the Earnest Money Deposit, or Deposits, if applicable, shall be returned to Buyer.

Buyer's Initials _BP_   Date _Apr 20, 2020_   Seller's Initials _____   Date _4-24-20_

Doc ID: c0e861dff53c9beec217734942b1b292229dfc40
Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** The REPC may be executed in counterparts. Signatures on any of the Documents, whether executed physically or by use of electronic signatures, shall be deemed original signatures and shall have the same legal effect as original signatures.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | | |
|---|---|---|
| **(a) Seller Disclosure Deadline** | April 30, 2020 | (Date) |
| **(b) Due Diligence Deadline** | May 08, 2020 | (Date) |
| **(c) Financing & Appraisal Deadline** | May 20, 2020 | (Date) |
| **(d) Settlement Deadline** | May 27, 2020 | (Date) |

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: 5 : 00 [ ] AM [X] PM Mountain Time on April 21, 2020 (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_____     _Apr 20, 2020_     _____     _____
(Buyer's Signature)          (Date)             (Buyer's Signature)          (Date)


## ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**
[ ] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.
[✓] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. ____.
[ ] **REJECTION:** Seller rejects the foregoing offer.

_Trulla_     _4/21/20_     _____
(Seller's Signature)     (Date)     (Time)          (Seller's Signature)     (Date)     (Time)

**THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE SEPTEMBER 1, 2017. AS OF JANUARY 1, 2018, IT WILL REPLACE AND SUPERSEDE THE PREVIOUSLY APPROVED VERSION OF THIS FORM.**

# ADDENDUM NO. 1
## TO
# REAL ESTATE PURCHASE CONTRACT

**THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER** to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of <u>20th day of April, 2020</u> including all prior addenda and counteroffers, between <u>Blaine Plastow</u> as Buyer, and _____ as Seller, regarding the Property located at <u>766 W 3300 S, Syracuse, Davis County, UT 84075</u> _____. The following terms are hereby incorporated as part of the REPC:

**1. Seller's Contribution to Closing Costs.** Seller agrees to contribute at Settlement the amount of $<u>7000.00</u> to be applied at Buyer's discretion toward any or all of the following: (a) a permanent reduction, or temporary reduction, in the mortgage loan interest rate; (b) mortgage financing costs; (c) closing costs; and (d) Prepaids/Escrows. Any unused portion of Seller's contribution may, at Buyer's option, be used to reduce the Purchase Price.

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. **[X] Seller [ ] Buyer** shall have until <u>5</u>:<u>00</u> **[ ] AM [X] PM** Mountain Time on <u>April 21, 2020</u> (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_____ *Apr 20, 2020*
[✓] Buyer [ ] Seller Signature          (Date)          (Time) [ ] Buyer [ ] Seller Signature          (Date)          (Time)

## ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

**[ ] ACCEPTANCE: [ ] Seller [ ] Buyer** hereby accepts the terms of this ADDENDUM.

**[X] COUNTEROFFER: [X] Seller [ ] Buyer** presents as a counteroffer the terms of attached ADDENDUM NO. 3 # 4

_____  Truxu  4-24-20
(Signature)          (Date)          (Time)          (Signature)          (Date)          (Time)

**[ ] REJECTION: [ ] Seller [ ] Buyer** rejects the foregoing ADDENDUM.

_____
(Signature)          (Date)          (Time)          (Signature)          (Date)          (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE JANUARY 1, 2020. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

SUBJECT TO SALE OF BUYER'S PROPERTY
ADDENDUM NO. 2
TO
REAL ESTATE PURCHASE CONTRACT

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of April 20, 2020   , including all prior addenda and counteroffers, between Blaine Plastow            as Buyer, and _____ as Seller, regarding the Property located at 766 W 3300 S, Syracuse, Davis County, UT 84075. The terms of this Addendum are hereby incorporated as part of the REPC, and to the extent the terms of this Addendum modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control.

1. **SUBJECT TO SALE CONDITION.** Buyer's obligation to purchase the Property IS CONDITIONED upon the closing of the sale of Buyer's property located at:2258 Allison Way Syracuse, UT 84075        ("Buyer's Property") by 5:00 P.M. (Mountain Time) on the 25th day of May, 2020 ("Buyer's Closing Deadline"). If the closing of the sale of Buyer's Property does not occur by the Buyer's Closing Deadline, Buyer may, within four (4) days after the Buyer's Closing Deadline, cancel the REPC by providing written notice to Seller. In the event of such cancellation, the Earnest Money Deposit shall be released to Buyer. This condition is referred to below as the "Subject to Sale Condition".

2. **BUYER'S DISCLOSURE.** Buyer's Property [X] IS [ ] IS NOT currently listed for sale through a real estate brokerage. If listed, the names of the Seller's agent and Seller's brokerage are as follows: Justin H Nunez Dwell Realty Group                         

3. **ADDITIONAL TERMS** (Check Applicable Box). If neither box is checked below, this section 3 shall not apply.

   A. [ ]  Buyer's Property IS currently under contract with a purchaser (a "3rd Party Contract").
   (1) The Settlement Deadline in the 3rd Party Contract is the _____. That Settlement Deadline MAY NOT be extended without the prior written consent of Seller.
   (2) If the 3rd Party Contract is cancelled, Buyer shall provide Seller with written notice no later than four (4) days after such cancellation. In such event, Buyer or Seller may cancel the REPC by providing written notice to the other party no later than four (4) days after receipt of such notice; whereupon the Earnest Money Deposit shall be returned to Buyer without the requirement of further written authorization from Seller.

   B. [X]  Buyer's Property IS NOT currently under contract with a purchaser.
   (1) Buyer shall have until the 15th day of May, 2020 to enter into a 3rd Party Contract with a purchaser (the "3rd Party Contract Deadline"). If Buyer has not entered into a 3rd Party Contract by that deadline, Seller or Buyer may cancel the REPC by providing written notice to the other party no later than four (4) days after the 3rd Party Contract Deadline; whereupon the Earnest Money Deposit shall be returned to Buyer without the requirement of further written authorization from Seller.
   (2) If Buyer enters into a 3rd Party Contract by the 3rd Party Contract Deadline, the Settlement Deadline in that contract shall be no later than four (4) days prior to the Settlement Deadline contained in the REPC and MAY NOT be extended without the prior written consent of Seller.
   (3) If the 3rd Party Contract is cancelled, Buyer agrees to provide Seller with written notice no later than four (4) days after such cancellation. In such event, Buyer or Seller may cancel the REPC by providing written notice to the other party no later than four (4) days after receipt of such notice; whereupon the Earnest Money Deposit shall be returned to Buyer without the requirement of further written authorization from Seller.

ALL OTHER TERMS of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 5 : 00 [ ] AM [X] PM Mountain Time on April 21, 2020   (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

| _____ | Apr 20, 2020 | | _____ | | |
| [✓] Buyer [ ] Seller Signature | (Date) | (Time) | [ ] Buyer [ ] Seller Signature | (Date) | (Time) |

## ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[ ] ACCEPTANCE: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.

[X] COUNTEROFFER: [X] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. 3 #4.

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

| _____ Trustee  4/24/20 | | | _____ | | |
| (Signature) | (Date) | (Time) | (Signature) | (Date) | (Time) |

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 1999 - REVISED 09.21.17 - ALL RIGHTS RESERVED                     UAR FORM 18B

Doc ID: c0e861dff53c9beec217734942b1b292229dfc40

Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846

# ADDENDUM NO. 3
## TO
# REAL ESTATE PURCHASE CONTRACT

**THIS IS AN  [ ]  ADDENDUM  [X]  COUNTEROFFER** to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of <u>20th day of April, 2020</u> including all prior addenda and counteroffers, between <u>Blaine Plastow</u> as Buyer, and <u>George Hofmann , Trustee</u> _ as Seller, regarding the Property located at <u>766 West 3300 South  Syracuse, Utah  84075</u> _____. The following terms are hereby incorporated as part of the REPC:

**1. OPTION TO KEEP HOUSE ON MARKET ("TIME CLAUSE")**

    **1.1 Right to Accept Other Offers.** Buyer and Seller agree that Seller may continue to offer the Property for sale and to accept other offers subject to the rights of Buyer as provided below. If Seller accepts any such offers, Seller will notify Buyer in writing within _____(1_) calendar days after entering into such a contract.

    **1.2 Right to Remove Conditions.** Buyer shall have _____ (72_) hours after receipt of Seller's written notice in which to either: (a) agree in writing to remove from the REPC the following condition(s)**(check applicable boxes):** [ ] Due DiligenceCondition;  [ ] Financing & AppraisalCondition;  **[X]** Subject to the Sale of Buyer's Property Condition (including any additional terms agreed to by Buyer and Seller in the Subject to Sale of Buyer's Property Addendum);  [ ] Other(explain):

or (b) by failing to respond in writing to Seller's notice, allow the REPC to automatically become canceled, in which instance, the Earnest Money Deposit, or Deposits, shall be released to Buyer.

<u>Seller to contribute $5000 towards buyers closing costs.  Section 25  offer and acceptance time is extended to April 24, 2020, 5:00 pm.</u>

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [ ] Seller [X] Buyer shall have until 10 :00  [X] AM [ ] PM Mountain Time on <u>April 27, 2020</u> (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

[ ] Buyer [✓] Seller Signature        (Date)        (Time)[ ] Buyer [ ] Seller Signature        (Date)        (Time)

## ACCEPTANCE/COUNTEROFFER/REJECTION
**CHECK ONE:**
[✓] **ACCEPTANCE:** [ ] Seller [✓] Buyer hereby accepts the terms of this ADDENDUM.
[ ] **COUNTEROFFER:** [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. ____.

_____ *Apr 27, 2020*
(Signature)        (Date)        (Time)        (Signature)        (Date)        (Time)

[ ] **REJECTION:** [ ] **Seller** [ ] **Buyer** rejects the foregoing ADDENDUM.

(Signature)        (Date)        (Time)        (Signature)        (Date)        (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE JANUARY 1, 2020. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Page 1 of 1        Buyer's Initials  BP    Seller's Initials _____    Addendum No. 3 to REPC

Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846

## Addendum No. 4 to Real Estate Purchase Contract

The following terms are hereby incorporated as part of the Real Estate Purchase Contract (the "Agreement") regarding real property located at 766 West 3300 South, Syracuse, Utah 84075, Tax ID No.: 12-381-0126 (the "Property") between Blaine Plastow ("Buyer") and George Hofmann (the "Trustee" or "Seller"), in his capacity as Chapter 7 trustee of the bankruptcy estate (the "Estate") of Derek Campbell (the "Debtor"). Capitalized terms used herein and not otherwise defined have the meanings ascribed them in the Agreement. To the extent the following terms modify or conflict with the provisions of the Agreement, these terms shall control. All other terms of the Agreement not modified shall remain the same.

1. _Bankruptcy Court Approval_. The parties hereby acknowledge and agree that the Agreement is subject to the approval of the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), including approval of a settlement agreement with third parties asserting lien(s) against the Property. Buyer acknowledges Purchase Price (as defined in the Agreement) is subject to higher and better offers; and acceptance of any higher offer shall be at the discretion of the Trustee.

2. _Seller_. For purposes of the Agreement and all addenda, the "Seller" shall be George B. Hofmann, in his capacity as Chapter 7 trustee of the bankruptcy estate of Derek Campbell.

3. _Conveyance_. Notwithstanding anything in the Agreement to the contrary (including, without limitation, paragraphs 6.1, 7, 10.2 and 10.3 of the Agreement), the Trustee shall convey the Estate's interest in the Property by a Trustee's Deed. Paragraphs 6.1, 7, 10.2 and 10.3 are deleted in their entirety from the Agreement. The sale contemplated by the Agreement does not include any personal property of the Debtor or property to which the Debtor claims is exempt. Buyer understands that the contemplated sale of the Property requires the consent of a non-filing co-owner, who presently agrees to convey any interest she has in the Property as part of the sale.

4. _Special Assessments_. Notwithstanding anything in the Agreement to the contrary (including, without limitation, paragraphs 4.2 and 4.3(c) of the Agreement), any special assessments and HOA or other fees due upon change or transfer of ownership will be paid by Buyer.

5. _Addenda_. Notwithstanding anything in the Agreement to the contrary (including, without limitation, paragraph 9 of the Agreement), the terms of this Addendum are incorporated as part of the Real Estate Purchase Contract.

6. _Changes During Transaction_. Paragraph 12 is deleted in its entirety from the Agreement. Debtor, his ex-wife and/or his family members reside in and occupy the Property, and the Trustee cannot and does not warrant against the changes described in paragraph 12 of the Agreement or any other changes to the Property, including the failure to maintain the Property or pay utilities related to the Property, except that the

Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846

Property shall be in a condition that is substantially similar to the condition on the date of the Agreement.

7.      Retention of Jurisdiction.  Notwithstanding anything in the Agreement to the contrary (including, without limitation, paragraph 15 of the Agreement), the Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with the Agreement, or the breach, termination or validity thereof, and mediation shall not be required.

8.      "As is" Sale.  NOTWITHSTANDING ANYTHING IN THE AGREEMENT TO THE CONTRARY, THE PROPERTY IS SOLD "AS IS, WHERE IS" AND WITH ALL FAULTS.  THE TRUSTEE MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE AUTHENTICITY, NATURE, QUALITY, UNIQUENESS, VALUE OR CONDITION OF ANY OF THE PROPERTY (INCLUDING, BUT NOT LIMITED TO, TITLE TO THE PROPERTY, USE, VALUE, ENVIRONMENTAL CONDITION, ACCESS, WATER SHARES OR RIGHTS, OR ANY OTHER CONDITION OF THE PROPERTY OR ANY IMPROVEMENT HEREON).  THE BUYER REPRESENTS AND WARRANTS THAT IT HAS NOT RELIED ON THE TRUSTEE'S SKILL OR JUDGMENT TO SELECT OR FURNISH ALL OR ANY PORTION OF THE PROPERTY FOR ANY PARTICULAR PURPOSE AND THE TRUSTEE EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  THE BUYER ACKNOWLEDGES AND AGREES THAT THE TRANSACTIONS CONTEMPLATED BY THE AGREEMENT ARE WITHOUT RECOURSE TO THE TRUSTEE OR THE ESTATE.

9.      Environmental Hazards.  Buyer acknowledges that the Property is a potentially dangerous place.  Flammable, noxious, corrosive and pressurized substances may be present.  Heavy equipment may be operated, and electrical circuits may be live.  Every person enters the Property as his or her own risk with notice of the condition of the Property and the activities that will be or have been conducted on the Property.  Buyer shall so advise its agents and employees.  No person shall have any claim against the Trustee or the Estate, or Trustee's agents, attorneys, or employees, for any injuries sustained or for damages to or loss of property that may occur at the Property.  It is Buyer's sole responsibility to meet all governmental safety and environmental standards in using the Property.  Certain portions of the Property may contain "hazardous substances," "hazardous wastes," "hazardous materials," or "oil" as those terms are defined under federal, state or local environmental laws and regulations (collectively, "Hazardous Substances").  The Trustee has no duty to remove any Hazardous Substances that are contained in or are a part of the Property.

10.     Taxes and Expenses of Sale.  Notwithstanding anything in the Agreement to the contrary, the Buyer shall be responsible for, and promptly pay, any taxes (including sales or transfer taxes), transfer fees, or other costs (other than attorneys' fees in connection with the sale of Property) incurred in connection with the sale of the Property, except that Buyer is not responsible for past due taxes owed by the Debtor.

11.    <u>Attorney's Fees</u>.  The parties agree that paragraph 17 of the Agreement is not binding on the Trustee.  Notwithstanding anything to the contrary in the Agreement, the Trustee shall not be liable for any other party's attorneys' fees, and no other party shall be liable for the Trustee's attorneys' fees.

12.    <u>Risk of Loss</u>.  Paragraph 20.2 is deleted in its entirety from the Agreement.  Debtor, his ex-wife and/or his family members reside in and occupy the Property, and the Trustee cannot and does not warrant against the risk of loss described in paragraph 20.2 of the Agreement or any other changes or loss to the Property, including the failure to maintain the Property or pay utilities related to the Property.

13.    <u>Survival</u>.  Sections 1-12 of this Addendum shall survive the Closing of this Agreement.

14.    <u>Counterparts</u>.  This Addendum may be executed in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

DATED this 24th of April, 2020.

SELLER:

_____
George Hofmann, solely in his capacity
as Chapter 7 Trustee of the Estate of
Derek E. Campbell

BUYER:

_____
Blaine Plastow

Doc ID: f2ce6f3e1450b56fb1f57a8a0ede8e74fc9a4846